UNITED STATES of America

v.

PEABODY CONSTRUCTION
COMPANY, INC., et al.

No. Civ.A. 0211796RWZ.

United States District Court,
D. Massachusetts.

Feb. 24, 2005.

Lydia D. Bottome, U.S. Department of Justice Trial Attorney, Tax Division, Washington, DC, Barbara Healy Smith, United States Attorney's Office John Joseph Moakley Federal Courthouse, Boston, MA, for Plaintiff.

John J. Spignesi, Andover, MA, for Defendant.

*MEMORANDUM OF DECISION*

ZOBEL, District Judge.

Peabody Construction Company, Inc. ("Peabody") owed $27,642.32 to Baldwin Steel ("Baldwin") as payment for subcontracting work. In turn, Baldwin owed $31,185.60 to Trustees of the Iron Workers District Council of New England Pension, Health and Welfare, Annuity, Vacation and Education Funds (the "Trustees") in employer contributions under the Employee Retirement Income Security Act. At the same time, Baldwin also owed money to the Internal Revenue Service (the "IRS") for certain unpaid tax liabilities. Peabody received a Notice of Levy from the IRS in 1999 regarding this obligation. The Trustees sued Peabody in federal court in 2000 as a reach-and-apply defendant. Peabody raised the issue of this lien's potential priority over the Trustees' claim, but neither Peabody nor Baldwin nor the Trustees moved to include the IRS as a party to that suit. Peabody notified the IRS about the suit, but the IRS never moved to join the litigation or provided any detailed or dated documentation of its lien. Consequently, nothing in the record specifically undermined the Trustees' showing of a choate claim deserving payment, and the court ordered Peabody to pay the money it otherwise owed to Baldwin to the Trustees instead. Peabody complied with this order.

In this law suit brought some years later, the United States challenges Peabody's payment to the Trustees as subverting the alleged priority of the IRS lien and has named both Peabody and the Trustees as defendants. In Count One, plaintiff asserts that Peabody is liable for refusing to surrender to the IRS the funds owed to Baldwin. In Count Two, plaintiff alleges that the Trustees misappropriated Baldwin's property in accepting Baldwin's funds from Peabody, effectively arguing conversion, since the Trustees knew of the IRS lien prior to accepting such funds. Plaintiff seeks payment from each defendant in the amount of the lesser of either (1) the funds paid by Peabody to the Trustees in the prior litigation, plus interest, or (2) Baldwin's unpaid tax liabilities, plus interest and any applicable statutory additions.

■ Plaintiff and the Trustees each now separately moves for summary judgment on Count Two. In order to establish a claim for conversion under Massachusetts law, plaintiff must show that

(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 95 (1st Cir.1993). Factors one, three and four are easily established in the instant case. The first factor of control or dominion over the personal property requires "intentional deprivation of property from the rightful owner." *Kelley v. LaForce,* 288 F.3d 1, 12 (1st Cir.2002). In the instant case, the Trustees intended to, and did, obtain control of the funds from Peabody. Even though the Trustees received the funds at issue as the result of a court order, "[i]t is no defense to conversion for defendant to claim that he acted in good faith, reasonably believing that he had a legal right to possession of the goods." *Id.* The Trustees accepted the funds with knowledge that the IRS's interest re-

38

mained unresolved, and thus, at the risk of a subsequent decision in the IRS's favor. With respect to the third factor, plaintiff alleged damage from the deprivation of funds, and the Trustees have not contested this allegation. Regarding factor four, the Trustees also have not disputed plaintiff's claim that they had rejected plaintiff's demand for payment. The remaining issue is the second factor, namely, whether plaintiff had an ownership or possessory interest in the Peabody funds at the time the Trustees acquired such funds.

■ Plaintiff asserts that its ownership interest derives from the IRS tax lien against Baldwin, as filed in 1999 against Baldwin in the New Hampshire Office of the Secretary of State. The Trustees dispute this claim on several grounds. First, the Trustees characterize the funds paid by Peabody as a setoff intended to compensate Baldwin's creditors and argue that, under state law, Baldwin never had any property interest in setoff funds. Rather, the agreement between Peabody and Baldwin intended for these funds to be paid directly to Baldwin's creditors with no interest held or retained by Baldwin. Because a federal tax lien may only attach "what is defined as property by state law," the Trustees maintain that IRS lien never successfully attached the setoff funds. *Markham v. Fay,* 74 F.3d 1347, 1364 (1st Cir.1996). Assuming *arguendo* that a setoff existed, however, the right of setoff becomes choate only upon its exercise. *See Horton Dairy Inc. v. United States,* 986 F.2d 286, 291 (8th Cir.1993), and *United States v. Bell Credit Union,* 860 F.2d 365, 369 (10th Cir.1988). The record contains no evidence to support the Trustees' claim that Peabody exercised the setoff, thereby making it choate, before the IRS filed its lien. Although the Trustees refer the Court to exhibits they filed in a separate action, these exhibits are not before

this Court and, thus, cannot be considered in connection with the instant motions.

■ The Trustees next contend that Baldwin's failure to pay its employee obligations constituted a material breach of contract enforceable by the Trustees as intended third party beneficiaries of the agreement between Baldwin and Peabody. The Trustees argue further that upon nonpayment by Baldwin to the Trustees, Peabody became directly liable to the Trustees as third-party beneficiaries. As a result, the funds paid by Peabody never became Baldwin's property and, thus, never became subject to the IRS lien. Courts in Massachusetts "have adopted the rule of the Restatement (Second) of Contracts § 302 (1981), and limit enforcement by [third-party] beneficiaries to those who are *intended* beneficiaries." *Miller v. Mooney,* 431 Mass. 57, 62, 725 N.E.2d 545 (2000)(emphasis in original). "The intent must be clear and definite" to establish third-party beneficiary status. *Anderson v. Fox Hill Village Homeowners Corp.,* 424 Mass. 365, 366–367, 676 N.E.2d 821 (1997). As the Trustees have not identified any language in the agreement between Baldwin and Peabody in support of their claim, or any other evidence of intent to benefit the Trustees, this reasoning fails to demonstrate why the IRS may not maintain a lien against the funds owed by Peabody to Baldwin.

■ The Trustee's last set of arguments challenge the perfection, filing and refiling of the IRS lien and specifically rely upon an assertion that the Uniform Commercial Code (the "UCC") governs federal tax liens. In response, plaintiff argues, based on the plain text of IRS regulations, that the Internal Revenue Code (the "IRC"), not the UCC, governs federal tax liens. *See, e.g.,* 26 C.F.R. § 301.6323(f)–1(c). The Trustees offer no authority in support of their contrary position, and other courts

have found that "[t]he statutory UCC requirements for the creation and perfection of security interests governing consensual, commercial transactions are completely at odds with the framework for tax liens provided within the Internal Revenue Code." *In re Elliott,* 67 B.R. 866, 869 (Bkrtcy. D.R.I.1986). Indeed, the cases the Trustees cite resolve the questions of perfection and filing under the IRC, not the UCC. *See, e.g., Waste Management of Missouri v. Evert,* 188 F.3d 1002, 1004 (8th Cir. 1999); *Griswold v. U.S.,* 59 F.3d 1571, 1575 (11th Cir.1995); and *U.S. v. New York State Dept. of Taxation and Finance,* 138 F.Supp.2d 392, 397 (W.D.N.Y.2001). The Trustees' further argument that plaintiff filed its Notice of Lien in the wrong state reflects an incomplete reading of the IRC. The statute in question places the site of personal property held by a corporation in the state "at which the principal executive office of the business is located," in this case, New Hampshire, and not Massachusetts as urged by the Trustees. 26 U.S.C. § 6323(f)(2)(B). Consequently, the Trustees have offered no persuasive challenge to plaintiff's claim that the IRS lien constituted an ownership or possessory interest in the Peabody funds at the time these were paid to the Trustees.

The Trustees raised a separate concern about the amount of the IRS lien and whether any responsible persons, for example a corporate officer, may have already provided payment to the IRS in partial satisfaction of the lien. Plaintiff already addressed this issue in its pleadings by seeking damages in an amount equal only to the lesser of the funds received by the Trustees or the total tax liability of Baldwin, including applicable accrued interest and penalties, as of the date that judgment is entered. In other words, plaintiff's damages would in no case exceed Baldwin's total outstanding tax liability.

Accordingly, plaintiff's motion for summary judgment (# 23 on the docket) is allowed, and defendant's motion for summary judgment (# 25 on the docket) is denied.